FJN:LAB
F. #2022R00506/OCDETF #NY-NYE-0904

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

ALEXIS HICIANO,

           Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

COMPLAINT

(21 U.S.C. § 841(a)(1) and 841(b)(1)(A)(vi))

No. 23 MJ 82

EASTERN DISTRICT OF NEW YORK, SS:

      MICHAEL SEGAL, being duly sworn, deposes and states that he is a Special Agent with the Internal Revenue Service ("IRS"), duly appointed according to law and acting as such.

      On or about January 25, 2023, within the Eastern District of New York and elsewhere, the defendant ALEXIS HICIANO did knowingly and intentionally distribute a controlled substance, which offense involved a substance containing fentanyl, a Schedule II controlled substance.

      (Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(A)(vi))

      The source of your deponent's information and the grounds for his belief are as follows:[1]

      1.    I am a Task Force Officer with the Internal Revenue Service ("IRS") and have been involved in the investigation of numerous cases involving drug trafficking, including

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

those involving the trafficking of fentanyl. I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file; and from reports of other law enforcement officers involved in the investigation.

2. In and around December 2022 and January 2023 an individual working with law enforcement (hereinafter "CS-1")[2] had recorded telephone conversations with an individual in Mexico ("CC-1") about drug sales. CS-1 agreed to buy 30,000 M-30 pills, or pills containing fentanyl, at $6.00 a pill from CC-1. In these communications they referred to these pills as "buttons" or "what the tailor uses," another reference to buttons. On or about January 24, 2023, CC-1 communicated to CS-1 that the 30,000 M-30 pills were available for delivery.

3. On or about January 25, 2023, the defendant ALEXIS HICIANO contacted CS-1 about meeting so that he could deliver the M-30 pills CS-1 had agreed to buy from CC-1. HICIANO and CS-1 had approximately five phone calls about the delivery. In these calls, a location for a meeting was discussed as well as payment for the M-30 pills. CS-1 also told HICIANO that he would be sending another individual (hereinafter "CS-2")[3], to retrieve the M-30 pills on his behalf.

---

[2] CS-1 has been working with the DEA and IRS for approximately three years after having been arrested in connection with drug charges. CS-1's information has proven to be reliable in this investigation and his previous cooperation has resulted in the discovery of several narcotics trafficking operations throughout the United States and Mexico. In 2020, CS-1 pleaded guilty in the Eastern District of New York to one count of narcotics trafficking conspiracy, pursuant to a cooperation agreement. CS-1 continues to cooperate with law enforcement authorities pursuant to his cooperation agreement, with the hope that CS-1 will receive leniency at sentencing.

[3] In 2018, CS-2 was charged in the Eastern District of New York with conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine. CS-2's information has proven reliable and been corroborated by independent evidence including surveillance, phone records, vehicle registration records, and controlled narcotics purchases. CS-2 is cooperating with law enforcement authorities with the hope that CS-2 will be able to plead guilty pursuant to a cooperation agreement and receive leniency at sentencing.

4.      Later that day, on January 25, 2023, the defendant ALEXIS HICIANO drove to a parking lot in Long Island City in Queens, New York, for the purpose of delivering M-30 pills to CS-1's associate, CS-2.  Prior to the meeting, law enforcement agents established surveillance in the area of the meeting.

5.      Law enforcement agents observed the defendant ALEXIS HICIANO arrive at the meeting location in Long Island City and walk up to CS-2's vehicle holding a large red bag.  Law enforcement agents then observed HICIANO get into CS-2's vehicle.  According to CS-2, CS-2 then instructed HICIANO to show him the product he was carrying inside the red bag.  HICIANO refused to do so and exited CS-2's vehicle, leaving the red bag in CS-2's vehicle.  At the direction of law enforcement, CS-2 opened the red bag and found a box, which contained a white container inside of it.  Inside of the white container were three brick shaped packages, which contained blue pills.  CS-2 informed law enforcement, who were still in the area observing both CS-2 and HICIANO, about the blue pills.

6.      Law enforcement conducted a traffic stop of ALEXIS HICIANO's vehicle after CS-2's discovery of the blue bills and placed HICIANO under arrest.

7.      The blue pills recovered were stamped with an "M" on one side and a "30" on the other side.  Based on my training and experience, the blue pills resemble M-30 pills or pills containing fentanyl.  Fentanyl is routinely packaged and sold in the form of blue pills with markings such as "M" and "30."  The weight of the blue pills handed by HICIANO to CS-2 was approximately over 400 grams.

8.      At the time of his arrest, the defendant ALEXIS HICIANO identified himself to law enforcement.  Law enforcement was also able to verify HICIANO's identity by reviewing his passport and driver's license which he was carrying.

9. WHEREFORE, your deponent respectfully requests that the defendant ALEXIS HICIANO be dealt with according to law.

_____
MICHAEL SEGAL
Special Agent
Internal Revenue Service

Sworn to before me this
26 day of January, 2023

_____
HONORABLE LOIS BLOOM
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK